KATHERINE I. HARTLEY
PACIFIC JUSTICE INSTITUTE
P.O. BOX 2131
COEUR D'ALENE IDAHO 83816
P: 858-945-6924
khartley@pji.org

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DARCY CREECH,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SUN VALLEY;  KYLE O'BRIEN in his individual and official capacities as a police officer for the City of Sun Valley,<br><br>    Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT**<br>**[42 U.S.C. § 1983]**<br><br><br>[Demand for Jury Trial] |

Plaintiff Darcy Creech (hereafter "Plaintiff" or "Ms. Creech"), by and through her undersigned counsel, alleges as follows:

### OVERVIEW

1.      This is a civil rights action for relief against an Idaho city and one of its employees. It is brought under 42 U.S.C. § 1983 and the U.S. Constitution.

2.      This action challenges police activity that restricted Ms. Creech's freedom of speech.

3.      Law enforcement has a duty to protect unpopular speakers and failed to do so on June 29, 2024, when Ms. Creech attended the Sun Valley Pride Festival.

4.      The vitality of civil and political institutions in our society depends on free discussion. It is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected.

1

5. Defendants demonstrated an unwillingness to foster such peaceful discussion and instead favored one viewpoint over another.

6. Ms. Creech asserts that the restrictions and treatment by Defendants violated her rights under the U.S. Constitution.

## PARTIES

7. Plaintiff Darcy Creech is an individual residing in the state of Idaho.

8. Defendant Kyle O'Brien was, at all times relevant to this action, a law enforcement officer employed by the City of Sun Valley.

9. At all times relevant to this action, Defendant O'Brien was a person acting under color of state law.

10. Defendant O'Brien is sued in his individual and official capacities.

11. Defendant City of Sun Valley employed Defendant O'Brien and authorized him to act as its agent.

12. Defendant City of Sun Valley's policies and procedures allowed for the actions taken by Defendant O'Brien.

## JURISDICTION AND VENUE

13. The Defendants are located within this judicial district and division. All of the events and omissions giving rise to the claims alleged herein occurred in this judicial district and division. Therefore, this Court has personal jurisdiction over the Defendants.

14. Furthermore, venue is proper in this Court and in this division under 28 U.S.C. § 1391(b).

15. This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1343(a)(3).

16. This Court has the authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202.

2

17.     This Court has the authority to grant the requested damages pursuant to 28 U.S.C. § 1343.

18.     This Court has the authority to award attorneys' fees under 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

19.     The Sun Valley Pride Festival was held on June 29, 2024, and open to the public at Festival Meadows in Sun Valley, Idaho. The event was advertised as "Fun for the Whole Family."

20.     Festival Meadows is a city-owned, large open field, centrally located in downtown Sun Valley and often used for public events.

21.     There were no entry restrictions such as gates, tickets, or registration for the Pride Festival.

22.     It was well known in Sun Valley that the Pride Festival would include a drag show in front of minors as part of the event.

23.     Months prior to the event, a number of citizens, including Ms. Creech, expressed their concern to members of the Sun Valley City Council about a drag show scheduled to take place in the presence of minors.

24.     The City of Sun Valley should have been aware of the need to provide a venue for its citizens to express the alternative viewpoints from those at the Pride Festival.

25.     Ms. Creech arrived to the event at approximately 2 p.m.

26.     After the drag performances, including segments in which several teenagers were encouraged to come up in front of the stage and participate, Ms. Creech approached a booth sponsored by Emmanuel Episcopal Church on the grounds of Festival Meadows and started a conversation.

27.     Ms. Creech peacefully asked representatives from the Episcopal Church if they were familiar with the book of Romans.

28. One of the representatives said that Romans was the book in the Bible where Jesus celebrates pedophilia.

29. Ms. Creech disagreed and questioned the people at the booth on their beliefs. They told her that she needed to leave and that they were going to call security.

30. Ms. Creech peacefully left before any security guard arrived at the booth.

31. At no point in time did Ms. Creech threaten or harass anyone or use vulgar language. In fact, another vendor whom Ms. Creech spoke with at the Festival also confirmed she was in no way threatening, despite fundamental disagreements.

32. As Ms. Creech was walking away from Festival Meadows, a security guard, who will be identified here only as John Doe 1 until his identity is ascertained, ran after her and took pictures of her and her license plate and told her he would make sure that she was tracked down.

33. Ms. Creech left the venue.

34. Shortly thereafter, Defendant O'Brien responded to a call at Festival Meadows wearing a body-cam.

35. The body-cam footage shows Defendant O'Brien approaching the Emmanuel Episcopal Church booth where Ms. Creech engaged in her conversation and stated, "I heard some horrible person came and talked to you."

36. Defendant O'Brien went on to say that it was "unacceptable" that Ms. Creech spoke to the individuals at this booth.

37. The individuals at the booth responded to Defendant O'Brien's questioning by saying that all Ms. Creech did was quote a Bible verse and made no threats.

38. Despite this, the body-cam footage reveals that Defendant O'Brien tried to find a way to cite Ms. Creech but realized he could not.

4

39.     Defendant O'Brien stated, "What she did does not fit criteria for disturbing the peace," and then, "Freedom of speech comes into it, and I hate that."

40.     Defendant O'Brien then said, "I don't like this because I'm a huge supporter of all this [the Pride Festival]."  He went on to say, "I'm not ok with this, so we are going to go talk to her no matter what."

41.     The officer then stated he was going to go tell Ms. Creech, "I'm the city official right now, and you're not allowed to go talk to anybody."

42.     Defendant O'Brien went on to say, "We got her license plate, so I found out where she lives so I'm going to go talk to her."

43.     Defendant O'Brien further said, "I have documented this, so her name is going to go into it, and I'm going to inform my supervisor of it because she is one of our city residents . . . and go up the chain to the chief and say 'chief, this is a person we need to be aware of.'"

44.     Within minutes, Defendant O'Brien went to Ms. Creech's home to warn her about the conversation she had with the individuals at the Episcopal Church booth and stated that the incident had been documented. Ms. Creech's residence is remote and not within Sun Valley city limits, which highlights the extra effort the officer made to confront her.

45.     Defendant O'Brien and another officer went to Ms. Creech's home in a squad car, in uniform, and wearing a gun.

46.     Defendant O'Brien told Ms. Creech not to return to Festival Meadows.

47.     Defendant O'Brien made no attempt to offer Ms. Creech an alternate means to communicate her dissent from the views of those at the Pride Festival and his own.

48.     At the time Defendant O'Brien went to her home, by his own admission, he was not investigating a potential crime or citable offense.

5

49.     This encounter left Ms. Creech feeling intimidated and that simply expressing her viewpoints could lead to being accused of criminal activity.

50.     Ms. Creech will not return to this event or any similar event until this matter has been resolved in a way to protect her speech. However, she intends to return to similar events in the City of Sun Valley if her speech rights are vindicated.

51.     After the June 29, 2024, incident, the police chief stated to Ms. Creech that this type of follow up was standard department policy.

52.     Ms. Creech also requested that a transcript of Defendant O'Brien's body camera footage from this incident be included in the police blotter entry, and her request was denied.

53.     Ms. Creech continued to suffer intimidation online after the event, with individuals posting on social media her picture, license plate, and residential property address with false accusations that she was "homophobic," and that she terrorized the Pride celebrants.

54.     On information and belief, due to the nonpublic nature of databases that link license plates to home addresses, this sensitive information likely originated from Defendant O'Brien or the City of Sun Valley.

## FIRST CLAIM FOR RELIEF
### Violation of Plaintiff's Free Speech Rights in Violation of 42 U.S.C. § 1983
### (Against Defendants)

55.     Ms. Creech refers to and hereby incorporates the preceding paragraphs as though fully set forth herein.

56.     The Free Speech Clause to the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

57.     The Free Speech Clause applies to the states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

58.     The Free Speech Clause prohibits restrictions of speech that are based on content or

6

viewpoint.

59.     A police officer has the duty not to ratify and effectuate a heckler's veto nor may he suppress ideas.

60.     On the date in question, Ms. Creech had a clearly established constitutional right to initiate a peaceful religious discussion in a public park with a group identifying itself as religious.

61.     When the group holding itself out to the public as a church group indicated to Ms. Creech that they did not wish to continue a religious discussion with her, she peacefully exited.

62.     At the time she left the public event, Ms. Creech had a clearly established constitutional right not to be intimidated by law enforcement after and away from the event, when it was known to law enforcement that she had committed no crime.

63.     At the time Defendant O'Brien approached the booth, it was clearly established that he could not, while in uniform and exercising authority, act on invidious stereotypes to intimidate a speaker who has done no wrong.

64.     At the time of the events in question, Ms. Creech had a clearly established constitutional right to even-handed treatment by law enforcement, untainted by an officer's idealogical disagreement with her religious views.

65.     At the time he knocked on Ms. Creech's door, Defendant O'Brien knew or should have known that she had exercised her clearly established constitutional right to enter a public forum and peacefully express her views.

66.     At the time Defendant O'Brien followed Ms. Creech to her home and knocked on the door, he knew or should have known that he had no legitimate law enforcement purpose for doing so. No crime had been committed or was in the process of being committed by Ms. Creech, no exigent circumstaces existed, and his primary purpose was to chill the exercise of First Amendment expression.

7

67.     At the time of the events in question, the City of Sun Valley had or should have had in place policies and procedures limiting officers' authority to go to the homes of peaceful, law-abiding citizens for the purpose of chilling those citizens' First Amendment expression.

68.     At the time of the events in question, Ms. Creech had a clearly established right not to have sensitive information such as her license plate number and residential address shared by law enforcement with individuals antagonistic to her religious views, for the purpose of intimidating her.

69.     Ms. Creech's speech was protected speech.

70.     Defendant O'Brien's conduct here would chill a person of ordinary firmness from exercising her speech.

71.     Ms. Creech's protected speech was a motivating factor in Defendant O'Brien's actions.

72.     Defendant O'Brien used his official powers to warn and retaliate against Ms. Creech's right to free speech.

73.     The City's policy, practice, or custom to follow up at someone's home with no investigatory purpose has a speech-chilling effect on citizens.

74.     A policymaker for the City of Sun Valley ratified the actions of Defendant O'Brien.

75.     The City did not make available an alternate means of communication despite knowing that some citizens desired to protest the activities at the Pride Festival.

76.     Congress has provided a vehicle for seeking relief from constitutional violations via 42 U.S.C. § 1983. Ms. Creech therefore brings this action pursuant to § 1983.

**PRAYER FOR RELIEF**

Ms. Creech respectfully requests that this Court enter judgment against Defendants and provide the following relief:

ON ALL CAUSES OF ACTION:

1.      A declaratory judgment against all Defendants that Defendants violated the First Amendment to the U.S. Constitution;

2.      An award of nominal damages against the City of Sun Valley;

3.      An award of compensatory damages against the City of Sun Valley;

4.      An award of attorney's fees, costs, and expenses against all Defendants pursuant to 42 U.S.C. § 1988.

5.      A preliminary and permanent injunction prohibiting Defendants from enforcing their speech-chilling policies and practices against Plaintiff; and

6.      Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Ms. Creech demands a trial by jury with respect to all claims so triable.

Respectfully submitted this 23rd day of September 2024,

/s/ Katherine Hartley
Katherine Hartley (Bar No. 11837)
PACIFIC JUSTICE INSTITUTE
PO Box 2131
Coeur d'Alene, ID 83816
khartley@pji.org

*Counsel for Plaintiff*

9

## VERIFICATION

I, Darcy Creech, am the Plaintiff in the above-captioned matter. I have read the Complaint and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true. I declare under penalty of perjury, under the laws of the United States and the State of Idaho, that the foregoing is true and correct. Executed this _23_ day of September 2024 in the County of _BLAINE_, Idaho.

_____
Darcy Creech, Plaintiff

10